IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANASTASIOS SMALIS,                        )
                                          )
            Plaintiff,                    )
                                          )
    vs.                                   )
                                          )
HOME DEPOT U.S.A., INC.,                  )
                                          )   Civil Action No. 20-1235
            Defendant/Third-Party Plaintiff, )
                                          )
    vs.                                   )
                                          )
DIVERSIFIED MAINTENANCE SYSTEMS,          )
LLC and DMC MANAGEMENT LLC,               )
                                          )
            Additional Defendants.        )
                                          )

**MEMORANDUM OPINION**

Presently before the Court are two motions for summary judgment: (1) the Motion for

Summary Judgment filed by Defendant/Third-Party Plaintiff Home Depot U.S.A., Inc. ("Home

Depot") (Docket No. 91); and (2) the Motion for Summary Judgment filed by Additional

Defendants Diversified Maintenance Systems, LLC, and DMC Management LLC ("Diversified")

(Docket No. 92).  The Court has considered the motions, as well as Anastasios Smalis's *pro se*

Responses in Opposition (Docket Nos. 110, 114), supporting memoranda, the parties' concise

statements of material facts, and the evidence of record.  For the reasons herein, Home Depot's

motion is granted and Diversified's motion is denied as moot.

I.      **Background**

As the parties are well-acquainted with the factual background of this case, at this juncture

the Court will present an abbreviated version of the facts relevant to the pending summary

judgment motions.  This case arises out of Smalis's June 9, 2018, trip to Home Depot Store #4136

(hereinafter "Store 4136") at 400 North Highland Avenue in Pittsburgh, Pennsylvania where he

intended to purchase wooden screws.  (Docket Nos. 1–2, 93, 95, 113, 116).  Upon entering Store 4136, Smalis walked to the men's restroom, entered the restroom, and continued toward the handicap stall.  (*Id.*).  Before he could make it to the stall, Smalis slipped and fell to the ground. (*Id.*).  Smalis then observed water on the ground and, because the water was not readily visible on the tile flooring, laid toilet paper on the floor to take a photograph documenting the floor's condition.  (*Id.*).  Smalis did not know the source of the water or how long it had been there and— being startled from his fall (Docket No. 116, pg. 5)—did not notice anything that could have caused the floor's hazardous condition (*e.g.*, a leaking pipe or toilet).  (Docket Nos. 93, 95, 113, 116). Smalis immediately went to the Customer Service desk to report he had fallen in the men's restroom.  (*Id.*).  The fall occurred at approximately 10:00 a.m. on a Saturday.  (*Id.*).  After he initially reported the fall, Smalis returned home to clean up before coming back to Home Depot later that day to make an incident report.  (*Id.*).

On or about June 7, 2020, Smalis filed a Complaint against Home Depot for negligence in the Allegheny County Court of Common Pleas.  (Docket No. 1-2).  Home Depot subsequently removed the matter to this Court pursuant to the Court's diversity jurisdiction.  (Docket No. 1).[1, 2] After removing the matter to this Court, Home Depot filed a Third-Party Complaint against Diversified which, pursuant to a Maintenance Service Agreement ("MSA") with Home Depot, maintained the restrooms at Store 4136.  (Docket No. 17).  In its Third-Party Complaint Home Depot alleged that if "any negligence or carelessness, as alleged by [Smalis]" was found, "then such negligence or carelessness was solely on the part of [Diversified] and was not due to any act

---

[1]     Home Depot removed the case to federal court when Smalis denied a statement in Home Depot's Answer to his Complaint that Smalis's "alleged damages, if proven, do not exceed $75,000.00, exclusive of interest and costs." (Docket Nos. 1, pg. 2; 1-3, pg. 7).

[2]     The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) in this civil action where the matter in controversy is greater than $75,000 and the parties are citizens of different States.

or omission on the part of Home Depot." (*Id.* ¶ 24). Home Depot also alleged that—if the Court were to decide that Home Depot was liable to Smalis—Diversified would be "alone liable to [Smalis]" or that Diversified would be "liable over to Home Depot for contribution or indemnity including, without limitation, the reimbursement of all costs, counsel fees and expenses incurred by Home Depot in the defense of th[e] action." (*Id.* ¶¶ 25–26). At the time, Home Depot further alleged Diversified's breach of contract for failure to indemnify and hold harmless (*id.* ¶ 35), breach of contract upon information and belief that Diversified failed to "properly maintain the restroom" where Smalis fell (*id.* ¶ 38), and breach of contract "in the event that [Diversified] ha[d] not purchased, or maintained, liability insurance naming Home Depot and its employees, without limitation, as an additional insured under the insurance policy or policies as required by the[ir] MSA" (*id.* ¶ 43). Discovery is closed and Home Depot and Diversified have filed summary judgment motions. Smalis opposes summary judgment as to both Home Depot and Diversified.

## II.     <u>Standard of Review</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)*; see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 247–48). A dispute pertaining to such a fact is "'genuine' if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue." *Id.* (quoting *Anderson*, 477 U.S. at 247–48). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. "A party asserting that a fact cannot be or is genuinely disputed must support

the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. *Boyle*, 139 F.3d at 393. The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case" for those elements "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("*Catrett*"). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. *Schulz v. Celotex Corp.*, 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. *See Catrett*, 477 U.S. at 324.[3]

### III.   Discussion

*Home Depot's Motion for Summary Judgment*

Smalis has alleged and argued that Home Depot's negligence caused his slip and fall at Store 4136. Home Depot seeks summary judgment and argues that Smalis's claim fails as a matter of law because he cannot show Home Depot had actual or constructive notice of the hazardous condition that caused his fall.

---

[3]      Because Smalis is a *pro se* plaintiff, the Court affords his filings a liberal construction. *See Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021) (discussing liberality of construction for *pro se* filings).

To prove negligence under Pennsylvania law, a plaintiff must establish: "(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." *Farabaugh v. Pennsylvania Tpk. Comm'n*, 911 A.2d 1264, 1272–73 (Pa. 2006). Pennsylvania has adopted the Restatement (Second) of Torts § 343 to "define[] the duty that a possessor of property owes to a business invitee," which is that such possessor is liable for "physical harm" caused by a "condition on the land" if the possessor "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Neve v. Insalaco's*, 771 A.2d 786, 790 (Pa. Super. Ct. 2001).

A plaintiff can prove negligence without direct evidence; that is, negligence "may be inferred from attendant circumstances if the facts and circumstances are sufficient to reasonably and legitimately impute negligence." *Lanni v. Pennsylvania R. Co.*, 88 A.2d 887, 888–89 (Pa. 1952). "Conjecture, guess[,] or suspicion," however, "do not amount to proof." *Id.* A plaintiff does not satisfy his or her burden by showing "the mere existence of a harmful condition in a store nor the mere happening of an accident due to such a condition." *Neve*, 771 A.2d at 790. To demonstrate deviation from the duty of care owed to business invitees, an injured invitee can show the defendant "helped to create the harmful condition," "had actual notice of it," or "had constructive notice of the harmful condition." *Id.* at 791 and n.5; *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) ("Because Saldana does not allege actual notice on the part of Kmart, she would ultimately be required to show that the wax was on the floor long enough to give Kmart constructive notice of this potential unreasonable risk of harm." (quoting *David v. Pueblo*

*Supermarket*, 740 F.2d 230, 234 (3d Cir. 1984) (internal quotation marks omitted))). "Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence*." Kujawski v. Wal-Mart Stores, Inc.*, No. CIV.A. 06-4120, 2007 WL 2791838, at *3 (E.D. Pa. Sept. 25, 2007) (citing *Martino v. Great A & P Tea Co.*, 213 A.2d 608 (Pa. 1965)). Pennsylvania law generally requires "some proof as to the length of time a spill existed on the floor to establish constructive notice." *Id.* at *4 (citing cases).

In its memorandum of law in support of its summary judgment motion, Home Depot argues that there is no evidence in the record that "demonstrates any cognizable negligence on the part of Home Depot"; therefore, Smalis "is incapable of proving the requisite notice, constructive or otherwise, of the alleged clear liquid … which is a transitory condition that may have existed on the floor for minutes or seconds prior to [Smalis] entering the bathroom." (Docket No. 94, pg. 4). Smalis raises several arguments in response: he argues that Home Depot has a "duty to *look* for dangers and it failed to do that" (Docket No. 110, pg. 4); was negligent insofar as it failed to follow its own standard operating procedures which established that "lot associates have the responsibility of checking the restrooms periodically throughout the day to ensure that the restrooms are clean and sanitary" (*id.* at 5); and had a cleaning contract with Diversified, but that Diversified "failed to clean men's restroom on day of [his] fall … as required under contract on the a.m. shift," giving rise to an inference that the water had been on the floor of the men's restroom for nineteen hours (*id.* at 18, 21).[4] In its Reply, Home Depot argues that Smalis admits he has no knowledge of how

---

[4]    In his response in opposition to summary judgment, Smalis also re-raises an earlier discovery dispute concerning Home Depot surveillance footage that Smalis suggests could show employees of Home Depot entering or exiting the men's restroom before his accident. (*Id.* at 10-16). Smalis submits that be "believes Home Depot is hiding truth on surveillance video" that, on "reasonable belief … would depict either Home Depot employees entering the restroom shortly before the fall, which would have put them on actual notice of the hazardous condition or the Third-Party Defendant entering and exiting the restroom." (*Id.* at 12). He continues "Either way, there is a strong indication that Home Depot is hiding information and is purposely obstructing discovery." (*Id.*). Spoliation occurs when

the water got on the floor of the men's restroom on the day of his accident, nor of how long it had been there.  (Docket No. 118, pg. 2).  And Home Depot insists that without any evidence concerning the duration of the spill, Smalis cannot create a genuine issue of material fact with respect to constructive notice.  (*Id.*).

Upon consideration of the parties' arguments, the Court finds that there are no genuine issues of material fact, and it is appropriate to award summary judgment in Home Depot's favor. As discussed above, to defeat summary judgment Smalis must have evidence sufficient to create a genuine dispute concerning notice because Pennsylvania law requires proving that "the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition" and that "either that the store owner helped to create the harmful condition, *or that it had actual or constructive notice of the condition*." *Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994) (emphasis added); *Kujawski*, 2007 WL 2791838, at *3 (quoting *Estate of Swift v. Northeastern Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997)). Smalis does not argue that Home Depot had a hand in causing the harmful condition on the men's restroom floor, nor that Home Depot had actual notice of the harmful condition.  Therefore, he must point to some evidence of constructive notice, *i.e.*, "some proof as to the length of time [the

---

"evidence was in [a] party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).  At a May 3, 2022, telephonic conference, the Court specifically pointed out to Smalis (who was then represented) that "the record seem[ed] quite clear … in the absence of other evidence, that there never was … a surveillance video immediately outside the bathroom door" and, resultantly, any attempt to compel production of such a video would be "a non sequitur."  (Docket No. 86, pg. 12). The Court informed Smalis that it would therefore deny a motion to compel without prejudice and permit Smalis to "advance any argument at the appropriate time procedurally as it relates to spoliation or otherwise attacking the credibility of those representations," concerning existence of such surveillance footage, "with other admissible evidence."  (*Id.* at 13).  To date, Smalis has not produced evidence that relevant surveillance footage exists nor evidence undermining the credibility of Home Depot's representations that such footage does not exist.  Smalis's continued insistence that Home Depot has withheld such evidence lacks non-speculative evidentiary support and falls short of showing that "the alleged video evidence even existed in the first place, much less that it was actually suppressed, withheld, or destroyed"; therefore, "[Smalis] cannot rely on his allegation of suppressed video evidence to create a dispute of material fact that would defeat [Home Depot's] motion for summary judgment." *Pace v. Wal-Mart Stores E., LP*, 799 F. App'x 127, 130 (3d Cir. 2020).

harmful condition] existed on the floor to establish constructive notice." *Kujawski*, 2007 WL 2791838, at *4.  He has offered none.

Instead of offering evidence concerning the duration the spill was on Home Depot's floor, Smalis argues that Home Depot failed to look for dangers, failed to have its lot associates check restrooms as they should have pursuant to Home Depot's standard operating procedures, and that Home Depot's cleaning service—Diversified—failed to clean the restrooms that day which, he argues, should give rise to an inference that the men's restroom had not been cleaned for nineteen hours.  But, critically, such evidence—of lot associates failing to monitor bathrooms or Diversified not cleaning the restrooms the morning of June 9th (despite significant evidence in the record that Diversified did have an employee on site that day), does not create a genuine factual dispute with respect to a *material fact*.  The fact Smalis would have to prove at trial is whether the spill was on Home Depot's floor for a sufficient duration for Home Depot to have constructive notice of it, but Smalis's evidence cannot show duration.

Other courts have arrived at the same conclusion when reviewing similar facts.   In *Kujawski v. Wal–Mart Stores, Inc.*, the court considered an argument about store employees' monitoring responsibilities similar to the one made by Smalis concerning Home Depot's lot associates and their purported obligations under Home Depot's standard operating procedures. 2007 WL 2791838, at *5.  The court in that case considered that Wal-Mart employees "were under a responsibility to constantly monitor their departments for potential hazards[,] or that a specific maintenance associate [was] responsible for constantly cleaning the floors," and determined that despite the plaintiff's argument that the employees disregarded Wal-Mart's policies on housekeeping, such a conclusion "would not be sufficient to raise a genuine issue of material fact suggestive of constructive notice."  *Id.*  This is because the record still lacked evidence about

"when the spill occurred" and how long it was there, *i.e.*, a jury would have been forced to speculate concerning constructive notice. *Id.*

Smalis's argument about it being unclear in the record whether Diversified showed up to clean Home Depot's restrooms the day of his accident likewise fails to defeat summary judgment. Home Depot in its statement of undisputed facts, asserts that on the day of Smalis's accident its bathrooms were cleaned by a Diversified employee before that employee left the store around 9:34 a.m. (Docket No. 91-2, pg. 3). Home Depot's attached "Exhibit C" is a Diversified Workforce Time Sheet Detail Query Report for June 9, 2018, that indicates James Street had a start time of 4:04 a.m. and an end time of 9:34 a.m., and the second page of that document indicates that the job site was Home Depot #4136, *i.e.*, the Home Depot where Smalis fell. (Docket No. 91-5). Also included is a "Janitorial Scope Effective January, 2018 Weekday (M – F) Summary Scope of Work – Type B Store" that appears to indicate that restrooms are cleaned twice on a first shift (assigned times of 5:00 a.m. – 6:30 a.m. and 10:30 a.m. – 11:00 a.m.) and twice on a second shift (assigned times of 2:-00 p.m. – 3:00 p.m. and 5:30 p.m. – 6:00 p.m.). (*Id.*). Smalis argues a few things with respect to Diversified's cleaning services. He argues that "Home Depot cannot abdicate its duty to ensure that its premises are safe just because someone else cleaned their restrooms once at 4am." (Docket No. 110, pg. 4). He also cites portions of the record that could be read to undermine Home Depot's representation that Diversified cleaned the restrooms in the morning on the day of the accident. For instance, Smalis cites deposition testimony from Diversified employee Edward Booker wherein Mr. Booker indicated he was familiar with the Workforce software but did not use it during his time at Diversified. (*Id.* at pg. 7). He also cites Mr. Booker's deposition testimony that *he* did not work on the morning of June 9, 2018 (*id.* at pg. 8) and questions the production of Mr. Booker as a witness when the evidence suggests that a different employee (Street) cleaned the

restrooms that day.  (*Id.* at pg. 20–21).  The thrust of his argument is that to the extent Home Depot relies on Diversified's cleaning of the men's restroom to avoid liability, whether the restroom was actually cleaned on the morning of his accident is a disputed fact.

Problematically for Smalis, however, is that even if it is disputed whether Diversified cleaned the men's restroom on the day of Smalis's fall, that does not create a factual dispute with respect to whether the spill was on the men's restroom floor long enough for Home Depot to have constructive notice of a hazardous condition.  Home Depot points this out in its Reply wherein it asserts that Smalis "cannot create an issue of material fact by alleging that … Diversified Maintenance, did not clean the restroom on the morning of the incident … as the presence of Diversified Maintenance does not … support any finding that Home Depot had constructive notice of the hazard" and because Smalis "has no active claims against Diversified Maintenance and their involvement is irrelevant to the absence of any evidence that Home Depot had notice of the hazard."  (Docket No. 118, pg. 3).  As discussed above, the time that elapses "between the origin of [a] defect or hazardous condition and the accident" is an important factor in the question of constructive notice.  *Neve*, 771 A.2d at 791 (citation omitted).  For there to be constructive notice, there must be some evidence "show[ing] that the defect existed for such a period of time that it could have been discovered and corrected through the exercise of reasonable care."  *Murray v. Siegal*, 195 A.2d 790, 792 (Pa. 1963).  The necessity of such evidence is "overwhelmingly clear in Pennsylvania law."  *Henderson v. J.C. Penney, Corp.*, No. CIV A 08-177, 2009 WL 426180, at *4 (E.D. Pa. Feb. 20, 2009) (collecting cases).

The decision in *Henderson*—a case wherein a plaintiff was injured by slipping on a "Dockers" tag at J.C. Penney—is instructive because of the similarity of the facts in that case.  *Id.* at *1.  The evidence in that case showed that the J.C. Penney store in question had an individual

who was responsible for monitoring floors and that all employees "were responsible for monitoring and maintaining the store when they s[aw] spills, debris, or obstructions while they [went] about their regular duties." *Id.* at *2.  J.C. Penney also had "cleaning subcontractors" who were "responsible for walking the aisles of the Store at certain intervals to ensure there was no debris on the floor" and that one such employee was scheduled to be at the Store "throughout the day." (*Id.*).  Regardless of such evidence, the court determined that J.C. Penney was entitled to judgment as a matter of law because the plaintiff could "present[] no evidence of how long the Dockers tag was on the floor prior to her fall." *Id.* at *5.  Without such evidence, the jury would only have been able to render a verdict in the plaintiff's favor based on its "conjecture" with respect to constructive notice. *Id.* ("A jury could only guess how long the hazardous condition caused by the Dockers tag existed before Plaintiff fell.").  And the court rejected the plaintiff's attempt to circumvent the requirement that she demonstrate "actual or constructive notice" by arguing that J.C. Penney could be liable on account of failing to perform reasonable inspections. *Id.*

Smalis, like the plaintiff in *Henderson*, critically lacks nonspeculative evidence concerning the amount of time the hazardous condition giving rise to his accident existed to show constructive notice.  And because there is no evidence Home Depot caused the water in the men's restroom nor that it had actual notice of it, some evidence that could prove constructive notice is essential.  Accordingly, because Smalis has not established the existence of any evidence that he could use to prove this constructive-notice element of his case at trial, an award of summary judgment to Home Depot is the most appropriate outcome. *See Catrett*, 477 U.S. at 323.

*Diversified's Motion for Summary Judgment*

Home Depot's prevailing upon its summary judgment motion nullifies its claims to entitlement to, *inter alia*, indemnification or contribution against Diversified.  Home Depot

acknowledges as much in its memorandum of law in support of its motion for summary judgment wherein Home Depot has represented to the Court that discovery in this matter assured it that there is "no evidence … which impute[s] liability on … Diversified" and that it will therefore "be dismissing its claims against Diversified following disposition of the instant motion." (Docket No. 94, pg. 2 n.2). Diversified recognizes Home Depot's representation in its memorandum of law in support of the motion for summary judgment (Docket No. 96, pg. 7), and in reliance thereupon adopts Home Depot's statement of facts and argument (*id.*). Home Depot having been found to be not liable to Smalis, Home Depot and Diversified no longer have a live controversy. *Pennsylvania v. Lockheed Martin Corp.*, 681 F.3d 503, 506–07 (3d Cir. 2012) ("A case or controversy requires (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." (internal quotation marks and citation omitted)); *see Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 269 (3d Cir. 2008) (affirming denial of third-party defendant's summary judgment motion as moot upon finding defendants owed plaintiff no duty of care). Accordingly, the Court will deny Diversified's motion for summary judgment as moot and dismiss the claims in Home Depot's Third-Party Complaint against Diversified.

**IV.**   **Conclusion**

Based on the foregoing, Home Depot's Motion for Summary Judgment is **granted**. Diversified's Motion for Summary Judgment is **denied as moot**. An Order consistent with this Memorandum Opinion follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated:          December 7, 2023

Cc/ecf:         All counsel of record

                Anastasios Smalis (via U.S. Mail)
                6652 Northumberland St
                Pittsburgh, PA 15217
                412-303-5564
                Email: smalisanastasios18@gmail.com
                PRO SE